Gretchen L. Staft
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gretchen_staft@fd.org

Counsel for Defendant Mahmoud Ghassan Soud

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:20-cr-00036-SLG-MMS |
|---|---|
| Plaintiff, | **DEFENDANT'S TRIAL BRIEF** |
| vs. | |
| MAHMOUD GHASSAN SOUD, | |
| Defendant. | |

Defendant Mahmoud Ghassan Soud, through counsel, Gretchen L. Staft, Assistant Federal Defender, submits the following trial brief.

### I.      STATEMENT OF THE CASE

The government alleges that Mr. Soud unlawfully possessed firearms on April 24, 2021 and May 3, 2020, while being subject to a domestic violence restraining order, in violation of 18 U.S.C. §922(g)(8).

On March 9, 2020, a state magistrate held a hearing on a request for a long-term protective order against Mr. Soud. Mr. Soud was present for the latter half of this hearing and was represented by Rex Butler. At the conclusion of the hearing, the magistrate issued a long-term DVPO against Mr. Soud. Notably, the magistrate did NOT order Mr. Soud to

surrender any firearms in his possession or prohibit him from using or possessing firearms. There is no evidence that Mr. Soud was aware that he became prohibited from possessing firearms by virtue of the issuance of this order.

On April 24, 2020, APD officers contacted Mr. Soud near Arctic and Benson Boulevard. Mr. Soud had exited his vehicle while in the middle of the street and was pointing to the sky and shouting about an alien invasion. Immediately upon seeing an APD officer arrive, Mr. Soud informed the officer that he was armed, put his hands in the air, and asked the officer to remove his pistol from his jacket pocket. The officer seized a Smith and Wesson 9mm pistol.

On May 3, 2020, APD officers attempted to make contact with Mr. Soud at his apartment. Mr. Soud expressed to officers that the world was under attack by aliens, and that he was afraid they would kill him if he opened the door. Mr. Soud insisted he needed to speak to the military and asked for them to be called to his residence. An officer negotiated with Mr. Soud through a window, and after a time Mr. Soud surrendered without incident. Mr. Soud informed officers of the location of his Mossberg shotgun within his residence, which was seized by police.

At issue in this case is Mr. Soud's knowledge as to his prohibited status pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

The defense does not intend to introduce evidence regarding Mr. Soud's apparent mental illness unless the Government opens the door. As detailed below, the defense moves

for exclusion of prejudicial or irrelevant evidence unnecessary prove the elements of the offenses charged in the indictment.

## II. EVIDENTIARY ISSUES

### a. Interstate Commerce

Counsel for the defendant and counsel for the government have conferred and will enter a stipulation regarding the issue of the interstate nexus relative to the firearms at issue in the case.

### b. Motion *in Limine* to Preclude Evidence Pursuant to FRE 403

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Frequently, evidence carries some prejudicial effect, but its risk of *unfairly* swaying the jury's verdict is substantial "whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Old Chief*, 519 U.S. at 185.

While Rule 403 should not be employed in a manner that unduly restricts the government's right to prove its case, unlike the threshold relevancy analysis, a Rule 403

calculation may be informed by "evidentiary alternatives." *Old Chief,* 519 U.S. at 184. *Old Chief* illustrates that, although a piece of evidence may be found to have probative value standing alone, during a Court's Rule 401 and 402 analysis, such value may look very different in the context of Rule 403. 519 U.S. at 186.

In this case, the factual issue in dispute is narrow: whether Mr. Soud *knew* he was subject to a court order meeting the requirements outlined in 18 U.S.C. 922(g)(8) when he possessed a firearm. In the two charged instances of possession—April 24 and May 3—Mr. Soud acted erratically and appeared to be suffering from delusions; he was clearly suffering from symptoms of his documented mental illness. In both instances, Mr. Soud is alleged to have had violent encounters with police. Evidence of these encounters could unfairly prejudice Mr. Soud by causing the jury to base its decision in his case on improper grounds. Further, in both instances, the government can effectively establish that Mr. Soud possessed a firearm without presenting evidence of his violent interactions with officers. Thus, the government should be precluded, under Rule 403, from eliciting evidence of either (i) Mr. Soud's altercation with APD officers on April 24, 2020; or (ii) Mr. Soud's threats to APD officers on May 3, 2020.

### (i) Evidence of Mr. Soud's Altercation with Police on April 24 Is Inadmissible Under FRE 403.

On April 24, police contacted Mr. Soud near his car in the middle of a busy street. Mr. Soud immediately notified APD officers that he had a firearm and relinquished the firearm to officers. Subsequently, Mr. Soud resisted being handcuffed, and was involved

in an altercation with officers.

The government has indicated that it does not intend to elicit evidence of Mr. Soud's altercation with officers on April 24. Mr. Soud's objects to the elicitation of any evidence of his altercation with officers on April 24. This evidence is irrelevant and highly prejudicial as it is may cause the jury to infer that Mr. Soud is violent and could lead the jury to improperly base its decision on this negative perception of Mr. Soud.

### (ii) Evidence of Mr. Soud's Threat to Officers on May 3 Is Inadmissible Under FRE 403.

On May 3, APD officers contacted Mr. Soud at his residence. When an officer knocked on Mr. Soud's door, Soud allegedly said he would start shooting if anyone entered his residence. Though the threat to officers was not recorded, much of the ensuing interaction with police was. In the incident, Mr. Soud, again, appeared to be operating under delusional beliefs regarding aliens, and he related a belief that aliens could inhabit the bodies of law enforcement officers. Approximately 15 minutes after the initial contact, he allowed officers to arrest him and relinquished a shotgun to the officers in the course of his arrest.

While Soud's alleged threat to the officer knocking on his door might be probative of gun possession, it is inadmissible under Rule 403 as it is unfairly prejudicial. While the government should not be unreasonably constrained in making its case, it can easily present evidence of Mr. Soud acknowledging possession of the firearm to officers on May 3, and relinquishing possession to the officers, and will not be prejudiced in any way be omitting

evidence of Soud's alleged threat to police officers.

As an audio recording of Soud's encounter with police clearly shows, about 15 minutes *after* he allegedly threatened officers, he tells officers: "I put the shotgun down." He then takes instructions from officers on what to do with the shotgun. Evidence of the threat to the police officer knocking on his door—particularly in the present historical context where the country has been wracked by a spate of gun violence—is highly likely to evoke an emotional response from the jury, and likely to cause jurors to convict on an improper basis—their fear of someone who is acting irrationally with a firearm. The analysis would be certainly different if there were no other evidence—beyond the threat—to establish gun possession. Yet, in this case, the record provides overwhelming evidence of possession, both by Soud's statements to police officers well after his initial threat, and his actions in relinquishing the firearm to officers. The alleged threat's probative value is minimal, cumulative, and vastly outweighed by its unfairly prejudicial potential.

    c. **Motion *in Limine* to Preclude the Government from Using the Term "Victim" to Refer to APD Officers or to Ms. Torio**

When employed at trial, the term "victim" can be an inflammatory term, and courts have frequently cautioned against or precluded the use of this term. *E.g.*, *Webster v. Sinclair*, 2010 WL 3787098, at *3 (W.D. Wash. Aug. 19, 2010), report and recommendation adopted, No. C09-1489-TSZ, 2010 WL 3787097 (W.D. Wash. Sept. 23, 2010)("the use of the term "victim" is not encouraged or recommended"); *Tolen v. State*, Not Reported in P.3d, 2012 WL 104477, *3-*4 (Alaska App. 2012) ("In a case such as

Tolen's, where it is a jury question whether a crime was committed, the court should not refer to the complainant as "the victim."); *State v. Warholic*, 897 A.2d 569, 584 (2006)("We caution the state, however, against making excessive use of the term "victim" to describe a complainant when the commission of a crime is at issue because prevalent use of the term may cause the jury to draw an improper inference that the defendant committed a crime against the complainant.); *State v. Wigg*, 889 A.2d 233, 236-37 (Vt. 2005); *State v. Wright*, 2003-Ohio-3511, ¶ 6, 2003 WL 21509033 (Ohio App. 2003) ("[T]he trial court should refrain from using the term 'victim,' as it suggests a bias against the defendant before the State has proven a 'victim' truly exists."); *Jackson v. State*, 600 A.2d 21, 25 (Del. 1991) (use of the term victim "should be avoided in the questioning of witnesses in situations where consent is an issue").

The government has indicated to the defense that it intends to refer both to APD officers who contacted Mr. Soud, and to Ms. Torio, as "victims." Neither Torio nor the APD officers can be said to be a victim of the offenses charged in this case. The use of the term "victim" is inflammatory and injects a host of irrelevant issues into the proceedings which run the risk of causing the jury to convict Mr. Soud on improper grounds or of confusing the jury.

Mr. Soud respectfully requests that the government be precluded from referring to Ms. Torio and the APD officers as "victims", and that it instruct its witnesses to refrain from using that term as well.

//

### III. Discovery Issues

The government informed the defense after the close of business on April 30, 2021, that additional discovery was available for download. Defense counsel has not yet had the opportunity to review this discovery, but according to the discovery log provided, it contains 112 pages, 18 audio recordings, and a number of photos. The defense will notify the Court as soon as possible if it discovers the need to request any specific relief based on this new discovery.

Additionally, the parties are awaiting materials from state court pursuant to this Court's order at Docket 89.

DATED at Anchorage, Alaska this 30th day of April, 2021.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gretchen L. Staft*
Gretchen L. Staft
Assistant Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on April 30, 2021. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gretchen L. Staft*